CIKLIN, J.
The appellant raises three issues pertaining to his conviction and sentence for fleeing or attempting to elude law enforcement and driving without a valid license. Evidence of an uncharged collateral crime concerning a shooting became a major feature of the trial — including admission of a projectile and bullet casing. Because the unnecessary and detailed evidence regarding the shooting unduly prejudiced the defendant, we must reverse and remand for a new trial.
Nixon Ward was tried before a jury for charges of fleeing and eluding and driving without a valid driver’s license for events that occurred on November 13, 2005. Fort Lauderdale police responded to the scene of a shooting. Ward became a suspect in the shooting incident and law enforcement officials issued a BOLO [1] to patrol officers. A short time later, patrol officers with the Fort Lauderdale Police Department spotted the vehicle identified in the BOLO and began to follow it. The vehicle, driven by Ward, was pursued by multiple police cars for approximately ten to twenty blocks, during which time the police officers who testified at trial conceded that Ward did not speed, violate traffic control devices or otherwise commit any traffic infractions (other than “turning too widely” on Powerline Road). Ward entered into the driveway at his mother’s house and police pulled up behind him. Ward was then arrested for the aforementioned charges.
Before trial, the state filed a motion requesting that it be allowed to introduce evidence of the shooting under the theory that it was inextricably intertwined with the “chase” that followed. After conducting a hearing on the issue, the trial court reserved ruling and stated that it would issue a written order, which apparently never happened. At trial, the state’s first witness, Officer Jack Dicristofalo, began testifying about the shooting and defense *1222 counsel objected, arguing the shooting was irrelevant to the charged crimes. The trial court overruled the objection and stated that it would consider defense counsel as having a standing objection to the introduction of all evidence of the shooting. Officer Dicristofalo then proceeded to testify at length and in detail about the shooting and the state introduced, over defense counsel’s objection again, photographs containing bloody images from the scene of the shooting.
Two other police officers testified for the state and referenced the shooting. At one point, Officer Mark Debord testified that when he approached Ward’s vehicle in Ward’s mother’s driveway, the officer had his gun drawn because he was fearful for his safety due to the previous shooting report. Officer Cecil Stone testified that upon arresting Ward, he searched Ward and found a spent bullet casing inside one of his pockets. Finally, the state extensively referenced the shooting in both its opening statement and closing argument, and at one point during closing argument urged the jury to take both the photographs of the shooting crime scene and a recovered bullet casing into the jury room while deliberating.
“Admission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion.” White v. State, 817 So.2d 799, 806 (Fla.2002) (quoting Ray v. State, 755 So.2d 604, 610 (Fla.2000)). This includes reviewing a trial court’s determination as to the relevancy of evidence. See Taylor v. State, 855 So.2d 1, 21 (Fla.2003) (holding that a trial court’s determination that evidence is relevant and admissible “will not be disturbed absent an abuse of discretion”) (citation omitted). “Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused where no reasonable person would take the view adopted by the trial court.” White, 817 So.2d at 806 (citation omitted).
Here, we confront the issue as to whether the evidence of the uncharged shooting was necessary to provide context for the charged offenses. It is well-established that “[ejvidence of a collateral offense may be admissible on the ground that it is inextricably intertwined with the charged offense and therefore relevant to prove that offense.” Kates v. State, 41 So.3d 1044, 1045 (Fla. 1st DCA 2010) (citing Osborne v. State, 743 So.2d 602 (Fla. 4th DCA 1999)). Evidence is “inextricably intertwined” if it is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s). See Dorsett v. State, 944 So.2d 1207, 1213 (Fla. 3d DCA 2006).
In the instant case, the state argues that evidence of the uncharged shooting was necessary to establish the entire context of the charged crimes. Clearly, the highly detailed shooting evidence and testimony was not necessary to establish the elements of fleeing or eluding,[2] which, in one subsection of the statute, is defined as the following:
Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominent *1223 ly displayed on the vehicle, with siren and lights activated commits a felony of the third degree....
§ 316.1935(2), Fla. Stat. (2005).
The jury was also instructed on another definition of fleeing and eluding:
It is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order or, having stopped in knowing compliance with such order, willfully to flee in an attempt to elude the officer, and a person who violates this subsection commits a felony of the third degree....
§ 316.1935(1), Fla. Stat. (2005).[3]
Neither of these crimes requires the state to prove the validity of or show the reason for the original pursuit. Instead, the focus is on whether law enforcement’s lights and sirens were activated and whether the defendant knew he or she was being ordered to stop by law enforcement and whether the person chose to defy that order by failing to stop. Simply stated, the underlying reason for the stop itself— at least in this case — was patently irrelevant to the charge of fleeing or attempting to elude.
The state argues that if the jury were not allowed to hear about the shooting, it would have appeared to them that the police had randomly decided to stop Ward’s vehicle. Additionally, argues the state, the police needed to explain why they were so concerned with stopping the vehicle as quickly as possible and thereafter taking control of the situation. While this may be true, the peculiarly detailed evidence of the shooting as admitted by the trial judge was overkill. The state could have reasonably elicited testimony which indicated that police needed to stop Ward’s vehicle because he was a person of interest in a recent incident. See Kates, 41 So.3d at 1046 (“[E]ven if evidence of an uncharged crime is inextricably intertwined with the charged offense, and is thus admissible to establish the entire context of the crime, unnecessary details must be excluded.” (citing Conde v. State, 860 So.2d 930 (Fla.2003))). This type of limited statement would have provided the jury with adequate context for it to understand why the police were attempting to detain Ward.[4]
Even though the trial court erred in admitting extensive evidence of the shooting, we would not reverse if the error were harmless. To prove harmless error, *1224 the state has the burden of demonstrating beyond a reasonable doubt that the error did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Here, the state starts out with an even more arduous burden because “[t]he erroneous admission of collateral crimes evidence is presumptively harmful.” McCall v. State, 941 So.2d 1280, 1283 (Fla. 4th DCA 2006) (citations and quotation marks omitted). This is because “[e]vi-dence that suggests a defendant has committed other crimes or bad acts can have a powerful effect on the results at trial.” Id. (citation and quotation marks omitted). In the instant case, the events surrounding the shooting became a prime feature of the trial because the state presented witnesses to discuss it and referenced it extensively in both its opening statement and closing argument. In fact, one law enforcement witness called to the stand by the state testified only about the shooting.
A review of the record suggests it is not unreasonable to conclude that the trial for fleeing- or eluding became a proxy-trial for the shooting. Therefore, we cannot conclude that the verdict would have remained the same absent the extensive impermissible evidence of the shooting.
For these reasons, we reverse and order a new trial on the fleeing or eluding count.
We have reviewed the other two issues Ward raises and find them to be without merit.

Reversed and remanded for a new trial.

POLEN and LEVINE, JJ., concur.

. BOLO stands for "be on the look out” and is the process by which law enforcement officers are able to announce, via communication device, to other officers that a suspect, vehicle, etc. is possibly involved in a crime or suspicious activity.

. While Ward was also charged and convicted of driving without a valid driver's license, he stipulated during the trial that he drove the vehicle without a driver's license. As such, his conviction for this charge will not be disturbed.

. Perhaps because of sheer popular usage, prosecutors, defense attorneys, and courts alike have created a misnomer by unwittingly characterizing the crime described in subsection (2) as "aggravated” fleeing and eluding and relegated acts committed under subsection (1) as "non-aggravated” fleeing and eluding or "ordinary” fleeing and eluding. The words "aggravated” and "ordinary” are nowhere to be found in either subsection and a review of the legislative history suggests that such designations for subsections (1) and (2) were never intended by the legislature. Instead, subsection (4), which was not charged in the instant case, defines aggravated fleeing and eluding, which involves damage to persons and/or property.

. We understand that in most cases in which a defendant is charged with fleeing and eluding, the defendant will simultaneously be charged with the crime that constituted the underlying events leading to the chase. In those situations, it is obviously relevant and necessary for the state to explain the events constituting both the underlying crime and the subsequence chase. As to the instant case, however, for whatever reason Ward was not charged with the underlying crime, the shooting, and therefore its relevancy was severely limited, if indeed it was relevant at all.