CIKLIN, J.
 

 The defendant, Tillman Moore, appeals his convictions for first-degree murder and aggravated child abuse, both against his three-month-old son. Moore argues two points on appeal: first, that he could not be convicted of both first-degree murder and aggravated child abuse because the crimes merged; and second, that the trial court erred in admitting evidence of prior burn injuries to the infant victim. For the reasons explained below, we find both of these arguments lack merit and therefore affirm.
 

 Facts
 

 Moore was charged with first-degree murder
 
 [1]
 
 and aggravated child abuse against his three-month-old son. The wounds that led to the victim’s death were alleged to have occurred on September 27, 2007, when the victim was in Moore’s sole care'.
 

 Before Moore’s trial, the state filed a motion to admit Williams
 
 [2]
 
 rule evidence of burn injuries the victim sustained before September 27, 2007. The trial court permitted the state to introduce evidence of the burns because they occurred during two incidents in which Moore alone was caring for the victim, though Moore claimed they were accidental burns.
 

 Moore’s jury trial lasted two weeks. Lawanda Addison testified that the victim was her son with Moore. She attended school during the day while Moore watched the victim. One day when the victim was two months old, Addison came home during a break and found the victim with a red mark on his chest. Moore told Addison that he placed the victim in the kitchen sink to bathe him and left the room for a minute to get something in another room; when he returned, the water had been turned to hot. Addison testified that she treated the burn with Neos-porin and gauze and it began to blister by the evening.
 

 Addison then testified that a couple weeks later, she came home from school and again found the victim with a burn injury, that time on two of his fingers. Moore explained to Addison that he was holding the victim while eating a bowl of hot noodles and the victim reached into the bowl and burned his fingers. Addison treated those burns with Neosporin as well.
 

 
 *48
 
 Addison then testified that a few days before September 27, 2007, she and Moore engaged in a heated argument. Moore was angry that Addison was not spending enough time with him. When Addison told Moore that she was planning to move to another location, he responded by telling her that he would kill her and the victim if she left. Addison called the police and Moore was compelled to leave the house for the night.
 

 On September 27, 2007, Addison went to school in the early morning. She received a phone call from Moore in the afternoon, during which she informed Moore that she was planning on braiding a relative’s hair that evening. Moore became upset and began yelling and screaming at Addison, so she hung up the phone.
 

 Shortly afterward, Moore called Addison again, informing her that the victim was not breathing. Addison rushed home and found Moore pacing back and forth while the victim lay at the head of the bed. Addison, who had some nursing training, attempted to perform CPR on the victim. When she asked Moore where the paramedics were, he informed her that he had not called them.
 

 Moore called 911 and attempted to administer CPR to the victim per the instructions he received over the phone. Eventually the paramedics arrived and took the victim to the hospital. The victim was pronounced brain dead.
 

 Addison testified that at the hospital she asked Moore what happened multiple times and he repeatedly told her he did not know and conjectured that the victim suffered a heat stroke. At one point, a doctor informed Addison and Moore that the victim had a skull fracture and asked them to explain how it happened. Moore repeated his claim that it was a heat stroke. Addison testified that she asked Moore multiple times whether the victim fell at any point and Moore always said no.
 

 Dr. Stuart Graham, a forensic pathologist who was a Palm Beach County medical examiner in 2007, testified that he performed the autopsy on the victim. Dr. Graham noted that he found multiple injuries on the victim, including scratches on his head and chest, bruises on his forehead and the back of his head, internal bleeding in his neck, and additional bruising on his lower back, right arm, and right leg. Dr. Graham also noted that the bruising he found on the victim’s head included bruising to the top of the victim’s head as well as separate bruising to both the right and left sides of the victim’s head. Dr. Graham concluded that the bruises to the victim’s head were caused by multiple impacts. He noted that the scar from the chest burn was two-and-one-half-inehes long and that the skin on one of the victim’s pinky fingers was starting to come off from the burn. Dr. Graham said he reviewed the investigative reports and recorded statements and concluded within a reasonable degree of certainty that the cause of death was blunt force injuries and the manner of death was homicide.
 

 Dr. Phillip Colaizzo, the medical director of the child protection team for Palm Beach County, examined the victim at the hospital. He concluded that the victim’s injuries were the result of “abusive head trauma.” He also concluded that the severity of the skull fracture, cranial bleeding, and brain swelling indicated that “massive force” was used on the victim.
 

 The defense presented the testimony of Dr. Joseph Scheller, a pediatrician and neurologist. He reviewed the victim’s medical records and autopsy photographs and testified he was suspicious that “maybe somebody pummeled the back of the head of this baby.” Dr. Scheller concluded that either someone was violent toward the victim or he fell and then bounced.
 

 
 *49
 
 The jury found Moore guilty as charged and the trial court sentenced him to life in prison for first-degree murder and thirty years in prison for aggravated child abuse. Moore timely appeals his convictions.
 

 First-Degree Murder, Aggravated Child Abuse, and Brooks
 

 Moore argues that under
 
 Brooks v. State,
 
 918 So.2d 181 (Fla.2005), the first-degree murder and aggravated child abuse charges against him merged. The portion of
 
 Brooks
 
 relevant to this appeal stands for the notion that child abuse which stems from a discrete, single act cannot also serve as the underlying felony for first-degree murder.
 
 Id.
 
 at 197-99. We have previously held that
 
 Brooks
 
 does not apply when the state presents evidence of multiple acts of abuse.
 
 See, e.g., Kennedy v. State,
 
 59 So.3d 376, 383 (Fla. 4th DCA 2011) (“We ... conclude that the offenses did not merge, as there was evidence of more than a single act of abuse.”). We find that the state presented ample evi dence in the instant case to suggest that the victim suffered multiple injuries before he died. The evidence indicated that the three-month-old victim suffered a skull fracture and had multiple, separate bruises on his head, in addition to other wounds to the victim’s right arm and leg. These constitute multiple acts of child abuse and not the single act contemplated in
 
 Brooks.
 

 Evidence of Prior Burn Injuries
 

 Next, Moore argues that the trial court erred in admitting evidence of the victim’s prior burns which unquestionably occurred while in Moore’s sole custody because the state did not prove that these burns were the result of abuse. “Admission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion.”
 
 Ward v. State,
 
 59 So.3d 1220, 1222 (Fla. 4th DCA 2011) (citation and quotation marks omitted). “Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused where no reasonable person would take the view adopted by the trial court.”
 
 Id.
 
 (citation and quotation marks omitted).
 

 The
 
 Williams
 
 rule has been codified in the Florida Evidence Code:
 

 Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
 

 § 90.404(2)(a), Fla. Stat. (2007).
 

 Courts have found that past incidents of child abuse are relevant in prosecutions for child abuse or first-degree murder of a child, in order to prove intent and also to prove absence of mistake or accident. In
 
 Evans v. State,
 
 693 So.2d 1096 (Fla. 3d DCA 1997), the Third District thoroughly analyzed this issue and concluded:
 

 [I]n a case charging the accused with the physical abuse of a child, where the state seeks to present evidence of prior physical abuse committed by the defendant upon the same child for the purpose of proving intent and/or absence of mistake or accident, there is no need for factual similarity between the charged offense and the prior abusive conduct beyond the existence of physical abuse in all instances.
 

 Id.
 
 at 1102.
 

 The Third District also quoted from Judge Pearson’s concurrence in
 
 State v. Everette,
 
 532 So.2d 1124 (Fla. 3d DCA 1988), which we find particularly apt in the instant case:
 

 That the abuse is not identical or even done under the same circumstances or in the same manner is of no moment
 
 *50
 
 where the identity of the abuser, as here, is not in issue. [The defendant’s] anticipated defense, gleaned from her statements to the police, is that the prior incidents occurred by accident or mistake. ... Surely a continuous series of such “accidents” is highly relevant to proving that what happened here was no accident.
 

 Id.
 
 at 1125 (Pearson, J., concurring).
 

 Based on all of Moore’s statements to Addison and to law enforcement, it is apparent that Moore’s anticipated defense to the charges that he abused and ultimately murdered his son was that the injuries were accidental. Because it is undisputed that Moore was the only person present when the victim sustained burn injuries on two prior incidents, there was no need for factual similarity between the prior burn injuries and the type of abuse which ultimately cost the victim his life. That Moore has claimed both burn incidents to have been accidents is of no import. There was clearly a connection between Moore and the collateral acts — the explanation he offered for the burns was for the jury to weigh. It does not render evidence of the incidents inadmissible.
 

 Thus, the trial court did not abuse its discretion in admitting evidence of the two prior burn incidents.
 
 [3]
 

 In conclusion, we find that both points Moore raises on appeal are without merit. Therefore, we affirm.
 

 Affirmed.
 

 GERBER and CONNER, JJ., concur.
 

 [1]
 

 . The state charged Moore with general first-degree murder, which encompasses both premeditated murder and felony murder.
 

 [2]
 

 .
 
 Williams v. State,
 
 110 So.2d 654 (Fla.1959).
 

 [3]
 

 . In fact, we find that the trial court carefully and thoughtfully exercised its discretion. The state also sought to admit evidence of the victim’s multiple fractured ribs in various states of healing. The trial court did not allow this evidence to be admitted because the older fractures could not be linked to Moore and because the newer fractures could have been caused by attempts to administer CPR on the victim on September 27, 2007.