DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSEPH D. BALDINO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-4668

[July 19, 2017]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Dan L. Vaughn, Judge; L.T. Case No. 562011CF001300A.

Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant, Joseph Baldino, appeals his convictions for one count of solicitation of a parent for unlawful sexual contact with a minor, five counts of transmission of child pornography, and ninety-nine counts of possession of child pornography. He raises two issues: first, that the court erred in denying his motion to suppress the computers seized as a result of a search warrant because the affidavit in support of the warrant contained material misstatements and omissions constituting intentional or reckless conduct by the police, which defeated probable cause; and second, that the court erred in admitting an additional 124 uncharged pictures of child pornography from a computer which were not inextricably intertwined with the charged crimes. As to the first issue, we affirm, as the court appropriately applied the analysis of *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and *Johnson v. State*, 660 So. 2d 648, 656 (Fla. 1995). As to the second issue, the uncharged images were not inextricably intertwined, and the court erred in overruling appellant's objection to their admission. As we cannot find that their admission was harmless beyond a reasonable doubt, we reverse and remand for a new trial on the possession of child pornography counts.

The charges against appellant arose after a St. Lucie County detective was contacted by a detective in Missouri who had received pornographic photographs of children from a "joeybaldino" while doing undercover computer investigations. The Missouri detective subpoenaed Yahoo for the name and address associated with the username. Yahoo responded with an address in Port St. Lucie, Florida. The St. Lucie detective was also contacted by an Illinois detective who had received unsolicited online requests from a username of "joeybaldino" and started receiving child pornography over the computer. Posing as "Pam," the mother of a twelve year old daughter, the detective engaged in multiple chat room conversations with "joeybaldino," some of which involved setting up a sexual encounter with the child. A third detective from New York also contacted the St. Lucie detective. He informed him of child pornography that a resident in New York had received from a "joeybaldino" while in a chat room. The New York detective had subpoenaed the Yahoo records and received the same information as did the Missouri detective. Based upon this information, the St. Lucie detective applied for a search warrant.

The warrant for a search of all computers at the address received from the Yahoo records, which was the family home of appellant, was executed by detectives. Living at that address were appellant, his parents, his brother, and his sister. Four computers were found, and two were removed for further analysis. Regarding one computer, which had stickers on it and was password protected, appellant, who was home at the time, admitted that it was his computer and he was the only one to use it. A forensic search of the computer revealed pornographic images of children. Based upon the chat room contact with the Illinois detective and the images found on the computer, appellant was charged with computer solicitation of a parent for unlawful sexual contact with a minor, transmission of child pornography, and possession of child pornography.

Appellant moved to suppress the search warrant of the computer, claiming that the affidavit contained material misrepresentations and omissions, and the detective either acted recklessly or intentionally in submitting the affidavit. He claimed that material information was omitted from the affidavit regarding appellant's addresses at the time that various transmissions of child pornography were made; various omissions of additional information identifying "joeybaldino" that was different than that contained in the affidavit; and the existence of other "joeybaldinos" in the area. The court heard extensive argument from computer experts regarding IP addresses and the information that the detective did not include in the affidavit.

2

The court then entered a detailed order denying suppression. It concluded that any information that the detective had failed to include was unintentionally excluded. In response to appellant's argument that the detective did not have personal knowledge of all that was contained in the affidavit, the court found that the detective could rely on information from fellow officers. *State v. Bowers*, 87 So. 3d 704, 709 (Fla. 2012). After reviewing the details of each of the investigations, the court acknowledged that only the Missouri investigation provided sufficient information upon which to base probable cause, but applying *Franks*, the affidavit was sufficient to secure a search warrant.

At trial, the Illinois detective testified he was assigned to the child exploitation unit, which investigates internet crimes against children. While in a Yahoo chat room in which there were a lot of sexually-based conversations regarding children, the detective, posing as "Pam," received a private message from an individual with the screen name "joeybaldino." While engaging in a conversation of a sexual nature about the fictional daughter of "Pam", the detective received thirty images of child pornography from "joeybaldino." During the next several days, the detective sent three messages to "joeybaldino" to see whether there was still interest in the child, as the detective ("Pam") was coming to Florida. In one of the chats, "joeybaldino" admitted sending images of child pornography to Pam.

Several days later, they had another computer chat, and "joeybaldino" again discussed arranging a sexual encounter with Pam and her daughter. Five days later, Pam sent "joeybaldino" a picture of "herself," and "joeybaldino" responded with a webcam picture of himself to the detective. The detective identified the webcam image as being a photo of appellant. The webcam picture was introduced as an exhibit. Around ten days later Pam and "joeybaldino" chatted again, during which child pornography was transmitted, as well as in another chat a few days later.

Summarizing, during four different chats, "joeybaldino" sent child pornography to Pam and tried to set up a sexual encounter with Pam and her daughter. Transcripts of all the chats and messages were admitted as exhibits, as were the images and videos of the child pornography.

When the search warrant was served, the detectives seized two computers. As part of the search, detectives interviewed appellant. He admitted that the password-protected computer, upon which a forensic analysis showed substantial child pornography, was his.

The detective who performed the forensic examination of the computers testified regarding the child pornographic images found on the computer appellant identified as his, the possession of which was charged in the information. The detective identified the images and testified that these images were accessed either during the time of, or shortly after, the chat room conversations with Pam. Two images of the appellant were found on the computer. One, taken by webcam and located under "my document" and "my pictures," was created on April 10, 2011, and last accessed on April 21, 2011.

In addition, the State sought to introduce 125 uncharged pornographic pictures found on appellant's computer. One was accessed close in time to the chat session with Pam on March 26, 2011, four hours after two images of appellant's face had been created, but the other 124 photos were accessed on a date unconnected with the various chats which formed the basis of the charges. The defense objected, but the trial court admitted the pictures as "inextricably intertwined" with the charged offenses.

The defense called appellant's sister, who testified that the entire family had access to the computer, although she admitted that she had told the detectives executing the search warrant that it belonged to appellant. Appellant also called a computer expert who testified that there were multiple "joeybaldino" logins with multiple IP addresses from multiple locations all over the world. Some of those occurred while appellant was incarcerated. He also examined two other computers from the home and found one image of child pornography on one, and LimeWire, a peer-to-peer software often used to download pornography, on another.

The jury convicted appellant on one count of soliciting a parent for unlawful sexual conduct, five counts of transmission of child pornography and ninety-nine counts of possession of child pornography, all as charged. He was sentenced to consecutive five year terms of prison on each count. Appellant now appeals.

**Search Warrant**

Appellant challenges the trial court's order denying the motion to suppress the computer evidence found from the execution of the search warrant, because the warrant was based upon a materially misleading affidavit. The trial court, however, followed *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and determined that the affidavit did support probable cause for the warrant. We agree.

4

A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the appellate court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling. The appellate court defers to the trial court's findings regarding the facts in connection with a suppression motion and uses the de novo standard of review for legal conclusions. *Luna v. State*, 154 So. 3d 1181, 1183 (Fla. 4th DCA 2015).

In *Franks*, the Court developed a test to determine whether misstatements in affidavits for search warrants would require suppression of the fruits of those searches. Where a defendant challenges an affidavit as containing a material misstatement, the defendant must make a preliminary showing: (1) that the affiant knowingly or intentionally or with reckless disregard for the truth included a false statement in the affidavit used to obtain a search warrant; and (2) that statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 171-72. If the defendant establishes these allegations by a preponderance of the evidence, then the court must suppress the fruits of the search. *Id.*

In *Johnson v. State*, 660 So. 2d 648 (Fla. 1995), the court extended the *Franks* requirements to omissions in affidavits, adding these additional requirements for the court to assess: (1) "whether the omitted material, *if added* to the affidavit, would have defeated probable cause," and (2) whether "the omission resulted from intentional or reckless police conduct that amounts to deception." *Id.* at 656. Without all of these findings, suppression of evidence seized by a search warrant, supported by the affidavit, should be denied. *Id.*; *see also Pagan v. State,* 830 So. 2d 792, 807 (Fla. 2002); *Murray v. State*, 155 So. 3d 1210, 1217 (Fla. 4th DCA 2015).

In reviewing the affidavit and the extensive testimony at the hearing on the motion to suppress, the trial court found no intentional or reckless conduct on the part the detective who prepared and submitted the affidavit. Having reviewed the evidence, the court's conclusion was supported by competent substantial evidence. There were omissions and some misstatements, but the trial court not only explained why they were not intentional or deceptive, it also, in accordance with *Johnson*, determined that the omissions, if added to the affidavit, would not have defeated probable cause. While it found that the evidence of the New York and Illinois investigations would not have supported probable cause, the information from the Missouri investigation, in and of itself, was sufficient to support probable cause. We give deference to the trial court's findings

5

of fact and agree with its legal conclusions. The motion to suppress was properly denied.

**Introduction of Uncharged Crimes**

In his second issue, appellant argues that the trial court erred in overruling his objection to admission of the additional 124 uncharged images of child pornography found on the computer. The standard of review for a trial court's admission of evidence is abuse of discretion, but a trial court's discretion is limited by the rules of evidence. *Gaines v. State*, 155 So. 3d 1264, 1271 (Fla. 4th DCA 2015).

The trial court found that the images were inextricably intertwined with the charged crimes.[1] Appellant contends that they were not intertwined and showed only propensity to commit crimes. Unlike the images of child pornography charged by the State, each of which was accessed close to the time of a chat room conversation with Pam, these additional images were not tied to any of the charged crimes. The State argues that the images were intertwined, because on the date they were accessed, appellant had created two images of himself on the same computer.

"Evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is admissible under section 90.402, Florida Statutes, because 'it is a relevant and inseparable part of the act which is in issue.'" *Osborne v. State,* 743 So. 2d 602, 602 (Fla. 4th DCA 1999) (quoting *Coolen v. State*, 696 So. 2d 738 (Fla. 1997)). "Evidence is 'inextricably intertwined' if it is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s)." *Ward v. State,* 59 So. 3d 1220, 1222 (Fla. 4th DCA 2011).

In this case, the uncharged images of child pornography do not satisfy any of the reasons for admitting inextricably intertwined evidence. They did not assist in "adequately describing the deed" of soliciting a parent for unlawful sexual conduct with a minor, transmission of child pornography, or possession of the charged images of child pornography. *Id.* Nor do the images provide an intelligent account of the other crimes or establish the entire context out of which the crimes arose. They do not describe events

---

[1] It specifically noted that it was not admitting the images as *Williams* rule evidence, because the State did not make that argument to the court. *See Williams v. State*, 110 So. 2d 654 (Fla. 1959).

leading up to the charged crimes, because the images were accessed *after* all of the charged crimes occurred. Because the collateral crimes do not fit within any of the reasons to admit such evidence, the court abused its discretion in finding that the uncharged crimes were inextricably intertwined.

In its brief, the State contends that inextricably intertwined evidence can be used to prove identity, citing to *Smith v. State*, 866 So. 2d 51 (Fla. 2004). In *Smith,* a murder case, a witness testified that immediately after the shooting the victim, the defendant said that the victim was the "13th or 14th [person] that . . . he had shot." *Id.* at 57. The supreme court held that the evidence was relevant to identity, because Smith's defense was that someone else had shot the victim. *Id.* at 60. The court then stated that *in addition* the statement was inextricably intertwined with the crime, having been made immediately after the murder. *Id.* at 62. The court adopted Professor Charles W. Ehrhardt's explanation of inextricably intertwined evidence that "this evidence is admitted for the same reason as other evidence which is a part of the so-called 'res gestae'; it is necessary to admit the evidence to adequately describe the deed." *Id.* at 63 (quoting C. Ehrhardt, Florida Evidence § 404.16 (1984 Edition)). Professor Ehrhardt distinguished it from *Williams* rule evidence, stating "it seems that both the language of Section 90.404(2)(a) and of *Williams* indicates that the rule applies to evidence of discrete acts other than the actions of the defendant committing the instant crime charged." *Smith,* 866 So. 2d at 63. In this case, the admission of uncharged child pornography images are evidence of discrete acts, not actions of the defendant in committing the charged crime. Thus, *Smith* supports a conclusion that this evidence was not inextricably intertwined evidence.

We thus conclude that court abused its discretion in admitting the 124 uncharged images of child pornography. The question becomes whether the admission of these images is harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986).

> The harmless error test, as set forth in *Chapman* and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. *See Chapma*n, 386 U.S. at 24, 87 S.Ct. at 828. Application of the test requires an examination of the entire record by the appellate court including a close  examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination

7

of the impermissible evidence which might have possibly influenced the jury verdict.

*Id.* at 1135. As noted in *Ward,* the State's burden is higher because of the nature of collateral crime evidence:

> Here, the state starts out with an even more arduous burden because "[t]he erroneous admission of collateral crimes evidence is presumptively harmful." *McCall v. State*, 941 So. 2d 1280, 1283 (Fla. 4th DCA 2006) (citations and quotation marks omitted). This is because "[e]vidence that suggests a defendant has committed other crimes or bad acts can have a powerful effect on the results at trial."

*Ward,* 59 So. 3d at 1224.

In evaluating the evidence, there was clearly overwhelming evidence of the commission of each of the crimes charged. Yet, the presence of overwhelming evidence alone does not satisfy the *DiGuilio* test. And in this case, there are three separate crimes to which the harmless error test must be applied.

As to the charge of solicitation of the parent for sexual conduct with a minor, the chat room conversations and the actual webcam image of the appellant, which he sent during one of the conversations, constitute powerful evidence. Appellant's identification of himself through the webcam picture tied him to the chats in which the solicitation took place. The fact that nearly a month later images of child pornography may have been accessed on a computer on which he also created images of himself is completely irrelevant to the crime of solicitation. Similarly, with respect to the transmission of the pornographic images, not only were they transmitted during the chat room conversations, but appellant admitted in one conversation that he had transmitted them to Pam. Again, we fail to see how the possession of additional uncharged images of child pornography in any way could have possibly influenced the verdict on this issue.

As to the counts of possession of child pornography, however, we come to a different conclusion. In his defense, appellant attempted to show that the computer on which the images were found was a family computer which could be accessed by anyone in the house. The introduction of an additional 124 images from that computer together with two images of him may have influenced the jury to conclude that the 100 images charged in the information were also possessed by the appellant. At least we cannot

8

say that the State has shown beyond a reasonable doubt that they would not have influenced the jury in the rendering its verdict on the possession counts.

For the foregoing reasons, we affirm appellant's convictions and sentences for soliciting a child for unlawful sexual conduct using computer services or devices and transmission of child pornography. We reverse appellant's convictions for possession of child pornography and remand for a new trial.

TAYLOR and LEVINE, JJ., concur.

*　　　*　　　*

***Not final until disposition of timely filed motion for rehearing.***