NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DAMARCUS J. KIRKLAND-WILLIAMS, )
)
        Appellant, )
)
v. )      Case No. 2D15-1525
)
STATE OF FLORIDA, )
)
        Appellee. )
                            )

Opinion filed November 3, 2017.

Appeal from the Circuit Court for
Hillsborough County; E. Lamar Battles,
Judge.

Howard L. Dimmig, II, Public Defender, and
Ivy R. Ginsburg, Special Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Susan M. Shanahan,
Assistant Attorney General, Tampa, for
Appellee.


LaROSE, Chief Judge.

        Damarcus J. Kirkland-Williams challenges his judgment and sentences for

first-degree felony murder while engaged in aggravated child abuse (count 1), and

aggravated child abuse (count 2). We have jurisdiction. See Fla. R. App. P.

9.140(b)(1)(A), (F). We affirm Mr. Williams' judgment and sentences in all respects. We

write to address his argument that the trial court erred in admitting Williams[1] rule evidence.

## Factual Background

Mr. Williams had been watching his girlfriend's thirteen-month-old son, E.M., for most of the day on May 18, 2011. Early on May 19, E.M. died. He sustained multiple blunt trauma injuries to his head and lacerations to his liver and spleen. E.M. also had multiple bruises and contusions all over his body. Mr. Williams told detectives that E.M.'s injuries were accidental. He explained that when E.M. was crying, he accidently hit E.M. on his back a couple of times and squeezed his stomach. When E.M. continued to cry, Mr. Williams tossed E.M. towards the bed; E.M.'s stomach hit a dresser. Mr. Williams also stated that E.M. slid off the bed and bumped his head.

The State charged Mr. Williams with first-degree felony murder while engaged in aggravated child abuse, and aggravated child abuse. Prior to trial, the State filed a notice of intent to rely on Williams rule evidence and a supplemental argument in support. The State sought to admit a video recording and eyewitness testimony that less than three weeks before E.M.'s death, Mr. Williams struck F.M., E.M.'s two-year-old sister, several times at a public park. At the Williams rule hearing, the State presented the testimony of the eyewitness and of the officer who investigated the incident at the public park. The State also played the video recording. The eyewitness testified that E.M. was crying a lot; the eyewitness started recording Mr. Williams and saw Mr. Williams shake E.M. The recording depicted Mr. Williams striking F.M. several

---

[1]Williams v. State, 110 So. 2d 654 (Fla. 1959).

times with a blunt object and then picking up F.M. by the arm and striking her with the object repeatedly, resulting in "numerous bruises and contusions on her body."

After viewing the video and the transcript of the interview between Mr. Williams and detectives, the trial court concluded as follows:

> [T]he Court is going to find that both criminal acts, both of the incidents involving these children were committed within a very short period of time of each other; both of these incidents involved situations in which the defendant was the caregiver at the time that these incidents took place. These children were close in age. Their injuries were consistent with each other that they both sustained blunt trauma injuries and that the State should be allowed to use it to show the absence of mistake or accident, and I'm going to allow the Williams[] [r]ule evidence in, the evidence during the trial.

At trial, the State presented the Williams rule evidence to the jury. The trial court explained the proper use of the Williams rule evidence to the jury before the eyewitness testified and in its final charge to the jury. The State also presented Mr. Williams' statements to detectives about E.M.'s injuries, as well as other testimony and evidence concerning the trauma E.M. endured. Specifically, the State presented the testimony of Dr. Mary Mainland, the chief medical examiner who performed E.M.'s autopsy. She testified that E.M. received numerous strikes or blows from a blunt object. She discounted the possibility that falling on a blunt object would have caused E.M.'s extensive injuries. The jury found Mr. Williams guilty as charged. The trial court sentenced him to life in prison for count one, first-degree felony murder, and to thirty years in prison for count two, aggravated child abuse.

<u>Analysis</u>

Mr. Williams argues that (1) the <u>Williams</u> rule evidence was irrelevant and its prejudicial effect substantially outweighed its probative value, and (2) the State's notice of intent was insufficient. "We review the trial court's admission of <u>Williams</u> rule evidence for an abuse of discretion." <u>Corson v. State</u>, 9 So. 3d 765, 766 (Fla. 2d DCA 2009).

*1. The Admission of the <u>Williams</u> Rule Evidence*

Mr. Williams argues that the trial court abused its discretion when it admitted the <u>Williams</u> rule evidence because the evidence was not relevant when his defense was not that E.M.'s death was a mistake or an accident, but instead that Mr. Williams did not cause the injuries that ultimately killed E.M. Alternatively, Mr. Williams asserts, even if the <u>Williams</u> rule evidence was relevant, its prejudicial effect substantially outweighed its probative value. More specifically, he contends that the emotional impact of the evidence improperly suggested to the jury that he had a propensity to hurt children. We disagree.

Section 90.404(2)(a), Florida Statutes (2011), provides that similar fact evidence of collateral crimes "is admissible when relevant to prove a material fact in issue," such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." <u>See also</u> <u>Wright v. State</u>, 19 So. 3d 277, 291-92 (Fla. 2009) (same).

Sadly, there are significant similarities between the incident involving E.M. and the incident involving F.M. The victims were siblings and resided with Mr. Williams.

- 4 -

The victims were toddlers. Both victims were entrusted to Mr. Williams' care at the time of the respective incidents. Witnesses placed Mr. Williams as the unsupervised caretaker of both victims when they were injured. E.M. was crying immediately before both incidents of abuse. The eyewitness testified that E.M. was crying immediately before the incident involving F.M. Mr. Williams admitted to detectives that he became frustrated when E.M. would not stop crying; Mr. Williams hit and tossed him.

Both victims were struck repeatedly. Dr. Mainland testified that E.M.'s injuries could have resulted from someone striking the child with a blunt object numerous times. And the video clearly showed Mr. Williams repeatedly striking F.M. with a blunt object. Furthermore, both victims suffered similar injuries, bruises, contusions, and abrasions. Both victims were subjected to blunt force trauma. Also, the temporal proximity between the incidents was close—both incidents occurred less than three weeks apart. See Evans v. State, 693 So. 2d 1096, 1099 (Fla. 3d DCA 1997) (finding that a prior incident that occurred two months before the homicide in question was not too remote in time to be relevant as collateral crime evidence). The circumstances are so strikingly similar as to point directly to Mr. Williams.

Accordingly, we conclude that the Williams rule evidence was admissible to prove absence of accident, intent, identity, and opportunity. See Pausch v. State, 596 So. 2d 1216, 1219 (Fla. 2d DCA 1992) (holding Williams rule evidence admissible to show the absence of accidental death when defendant stated that victim must have fallen on the floor while sleeping); Barber v. State, 781 So. 2d 425, 428-29 (Fla. 5th DCA 2001) (holding collateral offense testimony of an infant's injuries admissible to show identity, opportunity, intent, absence of mistake, and common plan or scheme

when defendant claimed she did not cause the injuries of the victim, a different infant). Even though Mr. Williams did not raise the defense of accident at trial, the Williams rule evidence was relevant to refute Mr. Williams' claims to detectives prior to trial suggesting E.M.'s injuries were accidentally sustained. See Estelle v. McGuire, 502 U.S. 62, 69-70 (1991) (holding Williams rule evidence relevant to eliminate the possibility of accident and show intent when defendant "claimed prior to trial that [victim] had injured herself by falling from the couch," even though defendant did not raise accident as a defense at trial); Evans, 693 So. 2d at 1102 (adopting the Court's "sound reasoning" in Estelle); see also Moore v. State, 78 So. 3d 46, 49-50 (Fla. 4th DCA 2012) (affirming the admission of Williams rule evidence because it was apparent from defendant's pretrial statements that his anticipated defense was accidental death).

We also reject Mr. Williams' argument that the probative value of the Williams rule evidence was substantially outweighed by the danger of unfair prejudice. See § 90.403 ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). The presentation of the Williams rule evidence at trial was limited to establishing an intentional act and to rebut Mr. Williams' pretrial statements that E.M.'s injuries were accidental. The trial court properly instructed the jury on the proper use of the evidence before the eyewitness's testimony and during the final charge. See McLean v. State, 934 So. 2d 1248, 1263 (Fla. 2006) (holding that the probative value of the evidence of the collateral offenses was not substantially outweighed by unfair prejudice when the evidence was not a feature of the trial and the trial court gave the necessary jury instructions). The Williams rule evidence was not a feature of the trial. See generally Fitzsimmons v. State, 935 So. 2d 125, 129

- 6 -

(Fla. 2d DCA 2006) (evaluating the number of witnesses who testified concerning the collateral crime evidence and the prosecutor's references to it during closing argument to determine whether it became a feature of the trial). Thus, we conclude that the trial court did not abuse its discretion in admitting the evidence. The evidence was relevant, and its probative value was not substantially outweighed by the danger of unfair prejudice.

*2. The Sufficiency of the Notice of Intent to Rely on Williams Rule Evidence*

Mr. Williams claims that the trial court should have excluded the Williams rule evidence because the State's notice of intent to rely on such evidence was defective. He contends that the State's notice failed to provide, with specificity, the reasons why it intended to offer the evidence. Mr. Williams relies on State v. Zenobia, 614 So. 2d 1139, 1140 (Fla. 4th DCA 1993), where the Fourth District found the notice to be insufficient because the State failed "to suggest in its notice what particular aspect—i.e., motive, opportunity, intent, preparation, plan, knowledge, or lack of consent—it [sought] to prove by such evidence."

Mr. Williams' reliance on Zenobia is unavailing. The State is not required to set forth in its notice the "specific reasons or explanations of what the jury might deduce from the [Williams rule] evidence." Quinn v. State, 662 So. 2d 947, 954 (Fla. 5th DCA 1995) (disagreeing with Zenobia). Instead, the State is only required to, "no fewer than 10 days before trial, . . . furnish to the defendant or to the defendant's counsel a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information." § 90.404(2)(d)(1).

The State filed its notice and supplement more than ten days before trial. The notice described the <u>Williams</u> rule evidence it sought to admit into evidence at trial. Further, the supplement detailed specific reasons and explained why the evidence was relevant to show identity, intent, absence of mistake or accident, common plan or scheme, and opportunity. The supplement also detailed the similarities between the incidents involving E.M. and F.M. This was more than adequate to meet the requirements of section 90.404(2)(d)(1).

For the foregoing reasons, we find no abuse of discretion in admitting the <u>Williams</u> rule evidence, and we affirm Mr. Williams' judgment and sentences.

Affirmed.

CRENSHAW and ROTHSTEIN-YOUAKIM, JJ., Concur.